**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

|  |  |
|---|---|
| ANGELO GOMEZ WRIGHT, | |
| Plaintiff, | Case No. 2:06-CV-542 TS |
| v. | |
| SCOTT VERNAL CARVER et al., | **MEMORANDUM DECISION AND ORDER** |
| Defendants. | |

Plaintiff, Angelo Gomez Wright, filed this *pro se* civil rights suit under 42 U.S.C. § 1983.  *See* 42 U.S.C.S. § 1983 (West 2007).  Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915.  *See* 28 *id.* 1915.  This case is now before the Court on Plaintiff's motion for a temporary restraining order, for consideration of Edwin Mitchell Pirela's motion to intervene, and for screening of Plaintiff's Complaint under 28 U.S.C. § 1915(e).

**ANALYSIS**

**I. Screening Standard of Review**

Under 28 U.S.C. § 1915(e)(2)(B) a court shall dismiss any claims in a complaint filed *in forma pauperis* if they are frivolous, malicious or fail to state a claim upon which relief can be granted.  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would

be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).  For screening purposes, the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Because Plaintiff is proceeding pro se the Court must construe his pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Id.* However, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*  While Plaintiff need not describe every fact in specific detail, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.*

## II.  Plaintiff's Allegations

In 2004, while housed at the Central Utah Correctional Facility (CUCF), Plaintiff intervened to prevent an assault by another inmate on a corrections officer.  Following this incident several corrections officials told Plaintiff that he would be rewarded with a special attention hearing before the Utah Board of Pardons and Parole ("the Board") and that he be would be recommended for a parole date.  Although Plaintiff's parole hearing was moved up three months he did not receive the promised

2

parole date recommendation.  At his parole hearing Plaintiff was
denied a parole date and set for a rehearing in one year.
Plaintiff states that the Board decided not to set a parole date
because it wanted a memo of progress from the Sex Offender
Treatment Program (SOTP).

After his parole hearing Plaintiff was transferred from CUCF
to the San Juan County Jail (SJCJ).  Plaintiff states that this
transfer was motivated by concerns for Plaintiff's safety based
on the incident involving the corrections officer, and to allow
Plaintiff to complete SOTP before his next parole hearing.
Following his transfer to SJCJ Plaintiff was admitted to the
jail's subdivision of SOTP.  Plaintiff states that rumors soon
spread throughout the jail about Plaintiff's involvement in the
incident at CUCF and Plaintiff began having problems with other
inmates.

On May 11, 2005, Plaintiff got into a "heated argument" with
another inmate who allegedly yelled racial slurs at Plaintiff.
Plaintiff states that he was the only black prisoner in the jail
at the time.  Following this incident Plaintiff met with the
Offender Management Review (OMR) committee which rejected
Plaintiff's version of the circumstances surrounding the argument
and threatened to remove Plaintiff from SOTP if there were any
more problems.  Plaintiff requested that jail officials take
certain measures to prevent future racial slurs directed toward

Plaintiff but they apparently took no action.

On June 23, 2005, Plaintiff was removed from SOTP after an argument with a therapist over alleged ongoing racial incidents. Plaintiff filed a grievance seeking reconsideration of his removal from treatment but received no response.  Plaintiff was then moved from the SOTP section of the jail to an "idle" housing section where he could not have a job or participate in treatment.  Plaintiff filed GRAMA requests for records pertaining to the previous racial incidents but was told that no records existed.  After continued denials of his grievances Plaintiff requested a hearing before the jail OMR committee to formally address his removal from SOTP and his desire to transfer to another facility where he could hold a job.  The OMR committee refused to meet with Plaintiff.  Five days after filing his OMR request, however, Plaintiff was transferred to the Utah State Prison.  En route to the prison Plaintiff spent an unspecified length of time at CUCF where he alleges he was afraid for his safety.

Upon his arrival at the prison Plaintiff informed the officer in charge of housing assignments, Defendant Haun, about the security issues Plaintiff faced.  Haun stripped Plaintiff of his former privilege level and assigned him to the Oquirrh-III housing unit which Plaintiff describes as an "idle" unit for "problem prisoners."  Plaintiff told Haun that he could be in

4

danger in Oquirrh-III because some of the inmates housed there might know about his intervention on behalf of a corrections officer.  Plaintiff requested an emergency OMR, which Haun agreed to schedule.  On August 14, 2005, the OMR committee gathered but did not allow Plaintiff a hearing, instead it upheld the reduction of Plaintiff's privilege level and left his housing assignment unchanged.  Based on his new housing assignment and reduced privilege level some of Plaintiff's personal property, including a CD player, CD's, fan, lamp etc., were confiscated and sent to the property unit.  Plaintiff states that these items were later sent out of the prison by Defendant Carlson without Plaintiff's authorization.

Plaintiff filed numerous grievances and appeals challenging the OMR committee's refusal to change his privilege level or housing assignment.  Plaintiff states that he also sent letters explaining his situation to various corrections officials including:  Derek Bethea, Plaintiff's former therapist at SJCJ; David Rasmussen, Oquirrh-III housing lieutenant; Deputy Warden William Labounty; O. Ruban Martinez, Emergency Management Review officer; Randy Dean Anderson, U.S. Marshall; Jeff Shoell, Correctional Rehabilitative Specialist; and, Allan Walker, Board of Pardons and Parole administrator.

On Friday, September 9, 2005, Plaintiff was assaulted by another inmate named Andrew Mallery.  Plaintiff states that

Mallery attempted to punch Plaintiff in the head but missed. According to Plaintiff, Mallery had been told about Plaintiff's intervention on behalf of the corrections officer and was complaining about being housed with Plaintiff.  Plaintiff reported the incident to Officer Schipaanboord and another unidentified officer.  Mallery was immediately transferred to another cell but remained on the same recreation yard as Plaintiff.  Plaintiff expressed concern about this arrangement to Schipaanboord but was told that nothing more could be done until Sunday when Lieutenant Rasmussen and Sergeant Christensen returned to work.  Schipaanboord stated he would log the incident and the cell changes so the night shift duty officers would be aware of the situation.

That evening Officer Peterson came on duty at 6:00 p.m.. Plaintiff alleges that due to Peterson's failure to read the log and incident report from earlier in the day Peterson mistakenly released all the inmates in the unit from their cells at 8:35 p.m.. Seizing this opportunity, inmate Mallery allegedly rushed into Plaintiff's cell and attacked Plaintiff using a combination lock in a sock.  Plaintiff was struck in the mouth knocking loose several teeth and splitting his lip.  Plaintiff pushed the call button in his cell but got no response, he then went to the section door holding a bloody towel to his mouth and got an officer's attention.

6

Plaintiff was initially taken to the prison infirmary and then to the University of Utah Medical Center emergency room where he received stitches in his lip.  The following morning a prison dentist took x-rays and wired Plaintiff's teeth in place. Plaintiff states that he later experienced complications and had to have one of his teeth removed.  During the extraction Plaintiff suffered a reaction to the numbing medication and had to be taken to the hospital.  Plaintiff states that he still has constant pain and cannot chew his food properly because of his injuries.

Plaintiff filed numerous grievances regarding this incident to no avail.  He also wrote a letter to Robin Williams, the chief inspector for the Division of Investigations, asking that an investigation be conducted.  Plaintiff states that despite his requests no investigation was ever conducted and none of the officers involved were ever disciplined.  On January 12, 2006, Plaintiff received his rehearing before the Board and received a parole date of May 16, 2006.  One of the conditions of Plaintiff's parole was completion of the sex offender program at the Bonneville Community Correctional Center (BCCC), a halfway house.  Plaintiff filed this suit shortly before being paroled.

### III. Sufficiency of Plaintiff's Claims

Plaintiff's Complaint names twenty-four individuals and the Utah Board of Pardons and Parole as defendants.  The Complaint

7

asserts four separate causes of action: first, cruel and unusual punishment under the Eighth Amendment based on failure to protect Plaintiff from being attacked; second, denial of due process under the Fourteenth Amendment stemming from Plaintiff's removal from SOTP, change of housing assignment and reduction in privilege level; third, denial of free speech under the First Amendment based on alleged retaliation for filing grievances; and, fourth, denial of equal protection under the Fourteenth Amendment based on alleged racial discrimination.  Plaintiff's Complaint seeks compensatory, punitive and nominal damages totaling $3,531,075; Plaintiff also requests declaratory and injunctive relief and costs.

### A. Eighth Amendment- Failure to Protect

To state a claim under the Eighth Amendment based on failure to protect, an inmate must allege facts showing: first, that he is incarcerated under conditions posing a substantial risk of serious harm; and, second, that the prison official "'has a sufficiently culpable state of mind,'" i.e., that he or she is deliberately indifferent to the inmate's health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  A prison official's state of mind must be measured by a subjective standard.  *Id.* at 835. Thus, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

8

exists, and he must also draw the inference." *Id.*  A defendant
is deliberately indifferent if he "knows of and disregards an
excessive risk to inmate health and safety." Farmer, 511 U.S. at
837.  The deliberate indifference standard is not satisfied by
either negligence or constructive notice.  *See Id.* at 835, 841.

The Court finds that Plaintiff's allegations are sufficient
to state an Eighth Amendment failure-to-protect claim against the
officers directly associated with the attack upon Plaintiff.
Plaintiff's allegations show that Haun, Schipaanboord and
Peterson were subjectively aware that Plaintiff faced a
substantial risk of serious harm due to his housing assignment
and that each of these individuals played a direct role in the
events which led to Plaintiff's injuries.  Thus, the Court will
direct official service of process upon these individuals.

Regarding the remaining individuals named in the Complaint,
however, the Court finds that none of these defendants are
sufficiently linked to Plaintiff's injuries to impose liability
under § 1983.  It is well settled that liability for a civil
rights violation cannot be based on *respondeat superior*.  *See*
*West v. Atkins*, 487 U.S. 42, 54 n.12, 108 S. Ct. 2250, 2258 n.12
(1988); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).
Instead, "'[p]ersonal participation is an essential allegation in
a § 1983 claim.'"  *Id.*  Plaintiff's allegation that he notified
certain individuals, after the fact, about the attack he suffered

but they failed to perform an investigation is insufficient to affirmatively link these individuals to a constitutional violation.  Moreover, none of the supervisory defendants named in the Complaint, with the exception of Haun, are alleged to have had any personal involvement in the situation that led to Plaintiff's injuries.  Thus, Plaintiff's failure-to-protect claim is dismissed with regard to each of these remaining defendants.

### B. Due Process

Plaintiff alleges that he was removed from SOTP without due process.  Plaintiff further alleges that because of his removal from SOTP he was transferred to less desirable housing, had his privilege level reduced, had his property confiscated and was unable to hold a job.  Finally, Plaintiff alleges that his removal from SOTP negatively impacted his parole date.

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  Thus, the first step in evaluating Plaintiff's due process claims is to determine whether his allegations implicate liberty or property interests protected under the U.S. Constitution.

It is well established that prisoners have no right under the Federal Constitution to any specific classification or housing assignment.  *See Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864, 869 (1983); *Templeman v. Gunter*, 16 F.3d 367, 369

(10th Cir. 1994); *Levoy v. Mills*, 788 F.2d 1437, 1440 (10th Cir. 1986). "Changing an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Templeman*, 16 F.3d at 369. Reclassification will implicate a protected liberty interest only where it imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301 (1995), or threatens to lengthen his term of confinement, *id.* at 487.

Plaintiff cannot show that his reclassification or removal from SOTP imposed an "atypical or significant" hardship on him or lengthened his term of confinement. Although Plaintiff may have been denied certain privileges following his removal, the regime to which he was subjected as a result of his reclassification was clearly "within the normal limits or range of custody which [his] conviction . . . authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 2538 (1976); *see also Sandin*, 515 U.S. at 487.

Plaintiff also cannot show that his removal from SOTP, even assuming it had an effect on his parole date, lengthened his term of confinement.[1] The Supreme Court has explicitly stated that

_____

[1] It does not appear that the housing or privilege level changes effected Plaintiff's parole date. Plaintiff admits that his rehearing date was already set before he was removed from

"[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104 (1979).  Moreover, Utah's parole statutes do not create a liberty interest entitling prisoners to federal constitutional protection.  *See Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994).  Under Utah's indeterminate sentencing scheme convicts are sentenced to a statutorily prescribed range of years and it is left to the parole board to determine whether a convict should be granted parole *prior to* the expiration of his legally imposed sentence. Plaintiff does not allege that he was imprisoned beyond the upper limit of his sentence.  Thus, Plaintiff's assertion that Defendants' actions interfered with his parole is insufficient to state a claim under § 1983.

It is also settled law that prisoners do not have a constitutional right to participate in rehabilitation programs. "Courts have not accepted the claim that an inmate has a constitutional right to any educational, or other programs, and there has never been a recognized constitutional right of rehabilitation for prisoners." *Termunde v. Cook*, 684 F. Supp. 255, 259 (D. Utah 1988); *see also Johnson v. Galli*, 596 F. Supp. 135, 159 (D. Nev. 1984) ("There is no constitutional right to

---

SOTP and that he was granted a parole date at that rehearing.

rehabilitation; idleness and a lack of programs do not violate the Constitution."). Nor can enrollment in such programs be described as a constitutionally protected liberty or property interest because "no fixed set of criteria entitles anyone to admission, and exclusion leaves the prisoner with the normal attributes of confinement." *Stanley v. Litscher*, 213 F.3d 340, 342 (7th Cir. 2000).

Finally, Plaintiff's allegations regarding disposition of his property following his housing transfer are insufficient to state a Due Process claim. It is well settled that Section 1983 does not create a cause of action for denial of property without due process where an alternative state remedy provides due process. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984). Thus, in a § 1983 action for damages resulting from the unauthorized or random deprivation of property without procedural due process, the plaintiff has the burden of pleading and proving that state processes, including state damage remedies, are inadequate to redress the claimed wrong. *See Gillihan v. Shillenger*, 872 F.2d 935, 940 (10th Cir. 1989); *Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Plaintiff has not made such a showing here.

In sum, because Plaintiff's removal from SOTP, housing transfer, privilege level reduction, and loss of property did not deprive him of any liberty to which he was entitled under the

federal Constitution, "no particular process was constitutionally due or required, regardless of state law." _Templeman_, 16 F.3d at 371. Thus, the Court concludes that Plaintiff's allegations are insufficient to state a claim under the Due Process clause.

### C. First Amendment - Retaliation

Plaintiff alleges that Defendants violated his First Amendment rights by removing him from SOTP, transferring him to the prison and reducing his privilege level in retaliation for his filing grievances and writing letters to prison officials about his alleged mistreatment.

The Tenth Circuit has held that "the existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right . . . may give rise to a . . . separate cause of action under section 1983." _Smith v. Maschner_, 899 F.2d 940, 947 (10th 1990). In _Gandy v. Ortiz_, No. 04-1225, 2005 WL 319131 (10th Cir. Feb. 10, 2005) (unpub.), the Tenth Circuit specifically held that prison officials may not impose sanctions upon an inmate merely for exercising his constitutional right to free speech. There, an inmate was punished after sending a letter to a commercial supplier of the prison to inform them of what he believed to be an illegal program being instituted at the prison that would impinge on their business. Prison officials confiscated the letter after it was returned to Gandy due to an incorrect address. Based on the

contents of the letter Gandy was found guilty of attempting to create a facility disruption and was sanctioned with ten days of punitive segregation and suspension from his paid work assignment.  Gandy also alleged that he was further sanctioned with an increase in his security classification and transfer to a higher-security facility.  The Tenth Circuit held that the sanctions imposed against Gandy violated his First Amendment rights because they were imposed in retaliation for exercising his right to free speech.

Unlike the plaintiff in *Gandy* Plaintiff has not alleged specific facts showing that he was sanctioned for exercising his First Amendment rights.  Plaintiff's factual allegations do not support the conclusion that he was punished in retaliation for filing grievances or writing letters.  In fact, Plaintiff admits that he was removed from SOTP based on conflicts with other inmates and therapists.  While Plaintiff denies instigating or being at fault in these conflicts he admits that they were the impetus for his removal.  There are no facts in the Complaint to support the assertion that officials used these incidents merely as a pretext to punish Plaintiff for exercising his First Amendment rights.

Although a transfer to harsher conditions of confinement may support a claim of retaliation, to proceed on such a theory a plaintiff must allege sufficient facts showing that the transfer

15

would not have occurred "but for" the inmate's exercise of his constitutional right.  *See Mount Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 97 S. Ct. 568 (1977)*.  In the present case it appears that Plaintiff's transfer and privilege level reduction resulted from Plaintiff's failure to complete SOTP, not as retaliation for filing grievances.  Moreover, Plaintiff does not allege that he was placed in punitive housing, such as segregated confinement; instead, he alleges only that he was moved to a less desirable housing unit with a concomitant reduction in privileges.  Plaintiff has not alleged facts showing that this transfer would not have occurred "but for" the exercise of his constitutional rights.

Accordingly, the Court concludes that Plaintiff's allegations are insufficient to state a claim for retaliation under the First Amendment.

### D. Equal Protection

Plaintiff asserts that his removal from SOTP, housing transfer and privilege level reduction were motivated by racial bias and, therefore, violated his right to equal protection of the laws.  It is well established that prison officials may not discriminate on the basis of race in granting or withholding privileges and that doing so violates the Fourteenth Amendment guarantee of equal protection. *Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991)*.  However, "[p]roof of racially

discriminatory intent or purpose is required to demonstrate a race-based violation of the Equal Protection clause." *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996). And, the burden of demonstrating discriminatory intent in an equal protection action rests with the plaintiff. *Watson v. City of Kan. City*, 857 F.2d 690, 694 (10th Cir. 1988).

Plaintiff does not allege any facts supporting his contention that Defendants acted with discriminatory intent in removing Plaintiff from SOTP or changing his housing assignment or privilege level. Instead, Plaintiff admits that he was removed from SOTP because of ongoing conflicts with other inmates in the program. Although Plaintiff states that the conflicts were caused by racial slurs directed at Plaintiff by other inmates there is no indication that prison officials condoned or encouraged such comments. In fact, Plaintiff admits that jail policies specifically prohibited such behavior. Plaintiff's bald assertion that jail officials could have done more to enforce this policy is not sufficient to show discriminatory intent.

Thus, the Court concludes that Plaintiff's Equal Protection allegations fail to state a claim on which relief can be granted.

### IV. Motion for Temporary Restraining Order[2]

Plaintiff has filed a motion for a temporary restraining order against BCCC officials based on their alleged ongoing violation of Plaintiff's constitutional rights.  Plaintiff was paroled to BCCC, a halfway house operated by the Utah Department of Corrections Division of Adult Probation and Parole, on May 16, 2006.  As part of its program for integrating offenders back into the community BCCC assigns parolees a privilege level based on their risk to the community and compliance with programming. Plaintiff asserts that BCCC officials are denying Plaintiff privilege level increases without due process.  Specifically, Plaintiff alleges that he is being denied privileges based on false accusations and manufactured evidence.  Plaintiff also asserts that he is being denied equal treatment because of his race.

The Court notes that neither BCCC nor any of the officials identified in Plaintiff's present motion are named as defendants in this case.  Moreover, Plaintiff's Complaint does not include any allegations regarding operation of BCCC; instead, it deals exclusively with events that occurred prior to Plaintiff's parole.  Given these facts it appears that Plaintiff's motion for a restraining order is actually an improper attempt to raise new

---

[2]     Although styled as a motion for a temporary restraining order it appears that Plaintiff's motion actually seeks a preliminary or permanent injunction.

issues and claims that have not been properly pleaded.  Thus, Plaintiff's motion for a temporary restraining order or preliminary injunction is denied.  If Plaintiff wishes to pursue claims these against BCCC he must do so in a separate case.

### V. Motion to Intervene

Edwin M. Pirela, an inmate at the Utah State Prison, has filed a motion to intervene in this case under Rule 24.  *See* Fed. R. Civ. P. 24.  Although the grounds for his motion are not entirely clear, it appears that Pirela seeks to challenge various aspects of the prison's sex offender treatment program, including its use of the penile plethysmograph.

Rule 24(b) states that "upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common."  Rule 24( c) requires that "a person desiring to intervene shall serve a motion to intervene upon the parties" and "[t]he motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24( c).  Finally, Rule 24(b) states that "in exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  *See* Fed. R. Civ. P. 24.

Pirela does not met the requirements for intervention as of

right under Rule 24(a), nor has he show that permissive intervention is warranted under Rule 24(b).  Although Pirela's motion asserts claims vaguely related to those presented in Plaintiff's Complaint it does not appear that common questions of law or fact exist.  In fact, Pirela's primary claim regarding use of the penile plethysmograph is not raised in this suit. Moreover, given his inmate status and the fact that he is proceeding *pro se* the Court finds that allowing Pirela to intervene in this action would unduly delay adjudication of the rights of the original parties.  Thus, Pirela's motion to intervene is denied; if Pirela wishes to pursue his claims he must do so in a separate case.

### VI. *Martinez* Report

Having found Plaintiff's allegations sufficient to state an Eighth Amendment claim as to Defendants Haun, Schipaanboord and Peterson the Court will direct the United States Marshals Service to serve a copy of Plaintiff's Complaint upon these individuals. Defendants are directed to file a *Martinez* report addressing Plaintiff's failure-to-protect claim within forty-five days after answering the Complaint.  *See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978)* (approving district court's practice of ordering the prison administration to prepare a report to be included in the pleadings in cases where a prisoner has filed suit alleging a

constitutional violation against institution officials).[3]

In preparing the report, authorization is granted to depose Plaintiff and to interview all witnesses.  The report shall contain the sworn statements of all persons having relevant knowledge of the subject matter of the Complaint.  Where Plaintiff's claims or Defendants' defenses relate to or involve the application of administrative rules, regulations, or guidelines, copies of those documents shall also be included with the report.  Plaintiff may file a response within thirty days of receiving the *Martinez* report.

If appropriate, any party may move for summary judgment based on admissible evidence presented in the *Martinez* report, however, any such motion shall be filed separately and shall be accompanied by a supporting memorandum.  Plaintiff is hereby notified that if Defendant moves for summary judgment Plaintiff

---

[3]  In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987), the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports.  The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims.  This, of course, will allow the court to dig beneath the conclusional allegations.  These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

cannot rest upon the mere allegations in his Complaint.  Instead, as required under Federal Rule of Civil Procedure 56(e), Plaintiff must come forward with specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.  Failure to do so will result in summary judgment being granted to Defendants.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's due process, equal protection and First Amendment claims are **dismissed** for failure to state a claim on which relief can be granted, *see* 28 U.S.C. § 1915(e)(2)(B);

(2) Plaintiff's motion for a temporary restraining order is **denied**;

(3) Edwin Mitchell Pirela's motion to intervene is **denied** and all motions filed by Pirela are **stricken**;

(4) the U.S. Marshals Service shall serve a summons and copy of Plaintiff's Complaint upon Haun, Schipaanboord, and David Peterson; and,

(5) Defendants shall file a *Martinez* report addressing Plaintiff's Eighth Amendment claim within forty-five days after answering the Complaint.

DATED this 20th day of March, 2008.

BY THE COURT:

_____

Ted Stewart
United States District Judge